Good morning, Your Honors, and may it please the Court, I am Charlie Huber, here on behalf of the Life Insurance Company of North America, which I will refer to by the acronym of LINA. I'd like to reserve five minutes for rebuttal. This case involves very extreme facts. It involves a car crash in Florida in August of 2018. It was 4 o'clock in the morning. The decedent was driving a sports car. He left the highway and entered an access road, which is a thin strip of road next to the ocean, Tampa Bay. It's a one-lane road, and it's a one-way road. And significantly, he was driving the wrong way down this road immediately before he crashed. The road had speed bumps, and it had a posted speed limit of 10 miles an hour. Significantly, the decedent was driving 65 to 80 miles an hour at the time of the crash. So this is at least six and a half times the posted speed limit. You would not want to do this when you were sober. Unfortunately, Mr. Wolf had a blood alcohol content of 2.0. He was effectively blind drunk. He had impaired judgment and reaction time. He did hit a bump. He did lose control of his car. He did go off the road and flew upside down into the bay where he drowned. His extreme conduct in this case make this wreck and his death both foreseeable and substantially certain. Could I pivot for a moment? I'm having trouble figuring out how we're supposed to interpret the policy. So the policy refers to sudden unforeseeable external events. And unforeseeable, I think, is in your briefing what you're focusing on. The denial letter and the appeal denial letter that Lina wrote interpreted unforeseeable to mean that an event is not highly likely to occur. What is the effect of Lina's interpretation of unforeseeable or foreseeable in the appeal, in the denial letter and the appeal letter? Is Lina bound by that basis for its decision? I believe that Lina, in writing the letter that way, was writing to a standard you didn't have to meet under the terms of the policy. The policy itself describes unforeseeability as the touchstone. And if something is unforeseeable, it is when something can't be foreseen, that's when you have an accident. Wait. Can you interpret your own language and now try to say, oh, that isn't what you meant? I mean, in fact, on the denial, I'm reading, given the common meaning of the words, we interpret highly likely to occur to entail a level of inevitability that is of a significant or large degree. That's what Lina said in denying coverage, right? Now, are you saying you're not bound by that? I'm saying that there are two ways to look at this case. The first one is under the express language of the policy. The express language of the policy uses the term unforeseeable. Yes, in construing this particular claim, they referenced the Wickman-type formula in analyzing the foreseeability and applied that. Are you saying that has no effect? So it just is a matter of the risk in federal common law. I mean, we normally say that when an insurance company has relied on one ground in their denial letter, there's limitations on whether they can shift their ground later on. This is a slightly different situation, but I'm wondering what the law is as to the effect of that letter. So I think that coverage cannot be created by waiver or estoppel. The policy says what it says. I'm not backing away from what they said in the letter. I think that the standard was met in terms of either highly likely or substantially certain. Well, let me just ask you about that for a moment. So highly likely to occur and substantially certain to occur are different standards. I know that cases have been all over the place in interpreting them, but it seems like substantially certain means 90% likelihood, highly likely maybe a 70%. I don't know how we quantify these sorts of risks. The district court applied substantially certain standard based on 9th Circuit precedent for the definition of accident. Is that so similar to highly likely to occur that if we think Lina is bound by highly likely to occur, we would say any error the district court made was harmless? I would think that would be the case. I would say that the cases, as you recognize, are a little all over the map in terms of whether highly likely and substantially certain are different. I think certainly in terms of as a matter of nomenclature, substantial certainty certainly sounds higher than highly likely. And I'd look to the Wickman Court, which talked about substantially certain perhaps being a little bit higher than highly likely. But I think in this case in particular, you don't need to get there because we went even under the substantial certainty test. How do you went under the substantial certainty test? Well, I think that the case law as a whole shows that there's a spectrum of both intoxication and conduct, which begins with mild impairment, and then includes moderate impairment, and then you get to significant impairment. As you wrote, excuse me, in the Kovach matter, there are certainly cases, citing Lennon, where driving the wrong way down a one-way street while drunk to the point of semi-consciousness at a rate of speed so fast that the vehicle is on the verge of becoming airborne amounts to a level of recklessness that would render the resulting injuries highly likely and therefore not accidental. It's unfair to read back to me my own opinion. What's that? Unfair. Unfair to read back my own opinion. Well, I thought it was... But the BOC level was over .3 in that case, was it not? No. In that case, in Kovach, I believe it was a... Oh, you're... In Lennon matter, yes, the gentleman had a .32. Right, right. And that was significant. In Kovach, he had a 1.1 and ran a stop sign. So you put that in the moderate category, whereas here, there's no way this is in the moderate category. Well, let me ask you this. How do you distinguish the Eighth Circuit case of McClellan versus Leina? That's your own... It was the exact same policy, exact same language, and this guy was going on a motorcycle at 90 miles an hour, weaving in and out of traffic, playing follow the leader with a .203, so slightly higher. And yet, the Eighth Circuit says, hey, it's still an accident and you've got to cover it. Well, the primary reason that case is distinguishable is because it's a first prong of Wichman case involving the... In that case, there was much more evidence of the decedent's subjective understanding or subjective assessment of risk. There was a lot of pre-incident... He'd been talking with his wife before about gardening the next day and taking the child to a baseball game, and there was evidence from that morning. But still, the court held that on the reasonable person objective standard, it was just not substantially certain to occur. And you lost under your exact policy languages here, did you not? I don't think that they exactly reached that point because, as they said, it was a first prong analysis under Wichman. Let me ask you this. I realize there are two circuit cases that applied de novo review like we have here. I think the Fourth Circuit and the Tenth Circuit cases both held that it was an accident or drunk driving kind of thing. Can you cite me any circuit case using de novo review that has held that it's not an accident? Well, I'm sorry I don't have whether it's circuit or not, but the Wilson matter, Vietna, the Pitts matter, which fits... Excuse me, that's a Northern District, Indiana decision. I don't think, though, that the difference between de novo and arbitrary and capricious matters in this case. Again, I'm looking at... Well, the question is whether it's the same language in the contract that's being interpreted. So that's a variable I'm interested in knowing. Well, there are certainly cases, as I mentioned, Fitz and Pitts, and then the winery matter from the Central District of California, where the language was... I gather you can't cite me a circuit case. I do not have a circuit case at my fingertips, Your Honor. Tell me this. How does the term accident as defined in the line of policy differ from the dictionary definition? I mean, the dictionary definition of an accident is an unforeseen occurrence, a sudden unforeseen occurrence. Isn't that the dictionary definition? Well, I haven't looked at a dictionary definition recently because we've been operating under the policy and the law. Well, let me read you from Merriam-Webster. Quote, an unforeseen and unplanned event or circumstance. Well, that sounds very similar to what the policy provides, but... Right. So, I mean, does your policy definition add anything that would cause us not to apply Padford? Well, the fact that the definition exists is what is important. And under Padfield and progeny, including the Bertell matter, which was significant to the district court, you don't apply Padfield or the common law definitions when the policy defines... Excuse me a second. So, just, I mean, on that point, even if we agree with you that you're not bound by what you said in the administrative appeal, you asked the district court to apply Padfield, didn't you? We asked that the district court utilize the Wickfield-Padman framework, as I think it was always going to do, in analyzing the facts of the case. But you, I mean, you affirmatively asked it to do that. You did not say, we have this definition that calls for you to do something different. Well, I would disagree. It may be nomenclature, but I think throughout, including looking at the issue in the first brief we submitted in this case, I think it's on page seven, the issue was whether benefits were payable under the policy. And if you look at under the policy time, again, we cited to the policy definition. So we certainly were not backing away from the policy. But then, but you explicitly said the controlling test is Wickman as applied by Padfield. Well... You did not say, you know, those cases say this, say what they say, but you should instead apply foreseeability. Those words do not appear in our brief. I agree with you there, yes. Did you want to save time for rebuttal? I did, yes, Your Honor. Let me ask you just one quick question. You have exclusions for skydiving and hang gliding. Why not just exclude drunk driving or exclude speeding? Well, the record is silent as to that. Some policies have exclusions, some do not. I'm not able to tell you why some do and some do not. It may deal with, you know, the type of policy or who's negotiated or the brokers, but I really have no idea. But you don't need an exclusion. There are plenty of cases where there was no exclusion and there was still no benefits payable under the definition of accident or under the common law, lack of a definition of accident. So an exclusion is, you know, would create a different kind of fighting, but it wouldn't really address the issue here, which is whether there is coverage under the language. Well, I'm just thinking that, though, if you're, if you've got to exclude, the exclusions, are they superfluous? Because if you're going to say, well, this was reasonably foreseeable and therefore no coverage. I'm saying it's irrelevant in this case because there isn't one. And I don't think that there's any inference that can be drawn from that because the case depends on how accident is, you know, interpreted as applied to these facts, which I, again, believe meets the standard, even if it's a substantial certainty, which hopefully I'll get to in rebuttal. Thank you. We'll hear from the other side. Good morning, Your Honor, Your Honors. May it please the Court. My name is Glenn Kanjar. I represent the appellee. A number of the arguments that I was prepared to advance, the Court has already raised. So I think I'd like to ask if the Court has questions of me to start before I give a presentation. What is the effect of Lina's denial letter, an appeal denial letter, with respect to the interpretation of the policy? And what law or what case do you rely on for that? Your Honor, I don't really think it matters, to be honest. I think we are here on a dispute that is governed by Ninth Circuit precedent, the Padfield case, that has been in effect for 20 years. So Padfield interpreted the word accident, but the Lina accident policy gives its own interpretation. So are you saying we should ignore the contract because there's a case that interprets the word accident in a different contract? I don't think you should ignore the contract. I think you should construe the contract in accordance with Ninth Circuit law and the other case law that has discussed the word foreseeable, which I think is the point they're trying to distinguish. Foreseeability is a word that is not part of the Padfield test. So just to be clear, you're saying we should ignore the denial and appeal denial letters that they have no effect on our interpretation of the contract? Yes, Your Honor. I'm going to go and say that I don't think the language of the letter is as important as the policy language that the Court needs to be interpreting. I think that the case law talks about... I find that a very strange position on your part. Well, Your Honor, maybe I didn't understand the Court's question, but what I wanted to argue is that the word foreseeability in this context has no meaning. It's meaningless to the extent that... First, this is a de novo review, so... So do you have some case saying that a word in a contract shouldn't be interpreted because it has no meaning? I have never seen that principle before. No, I'm saying that there are cases that say that this word has no meaning, in that... That the word foreseeable has no meaning. Can you cite that case? Well, the Whitman case talks about... Do not say that the word has no meaning. I'm unfamiliar with that case. It said that it compared foreseeability with unexpected or unforeseeable with unexpected. And so they're basically the same thing. I've seen no cases that have a different meaning between unforeseeable and unexpected. And if you give meaning to unforeseeable or unexpected, there is no such thing as an accident. None. I mean, I flew up here yesterday on a Boeing 737 MAX 800. Well, we all know from the news that's a dangerous plane, according to some. So that was a hazardous activity on my part to get on that plane. I got here in an Uber, and honestly, I didn't put my seatbelt on in the backseat of the Uber. So if I was in a car crash, it was foreseeable... So we give meaning to foreseeability in all sorts of contexts, in state tort law and the like, are you saying that in all those cases it has no meaning? I'm not saying in those cases. I'm saying in this context. They don't define foreseeability. So that what I'm saying is... Why can't we interpret it as we do in every other legal context to have some meaning, to have some proximate cause-type meaning? I mean, we do that in every other situation. Well, the court certainly could, but it's an ambiguous term in this context. Insurance policies are to be read in their popular and ordinary meaning by a person of average intelligence. So I should look up foreseeable in the dictionary. That's what we usually say when we don't have a defined term. And I'm sure it provides some content to that word. I don't think it says, this is a word that has no meaning. No, I'm not saying it has no meaning. I'm saying it has no meaning in the context, Your Honor, of an accident where everything is foreseeable. Insurance should not have to be reading case law to know how to interpret their policy. I believe that was a statement that came out of the Kovacs case. I apologize for throwing the language back at you. Can I ask you to go back a couple minutes? I thought your position was, because your brief said, that it was your view that the whole foreseeability question was forfeited because they said something different in the denial letter and waived because of the way they litigated the case in the district court. Is that not your position? That is our position, Your Honor, but I do acknowledge that there are exceptions if the court wants to take this on as a legal argument. But I stand by my position that this is a de novo case and that the term foreseeable has a number of meanings, that a reasonable interpretation by the insured gives it no real meaning, it's not defined, and there's no way for an insured to know what it means. So is your position that if it's ambiguous, then we rule in your favor because ambiguity is construed against the insurance company? Well, I would start, yes, there, that the reasonable expectations of the insured that you would apply contra preferendum, that unforeseeable in this context, I believe, is an ambiguous term. And if taken to, as I've said, to its extreme, it means there's no such thing as an accident. They'll never pay it. Now, the court, in questioning of my opposing counsel, raised a point that I think is extremely important, which is the exclusions. They do put exclusions in. There's exclusions for suicide, there's exclusions for self-inflicted injury. So are there cases saying that, if something is not in an exclusion, when there are other exclusions in the policy, we should infer that the language doesn't cover it? Is there a case that says that? I cannot cite that case, Your Honor. In fact, I will acknowledge there are cases that say, just because there's exclusions doesn't mean that the insured has met the burden here of establishing the insuring event. It's irrelevant, then, the exclusions. Well, I don't think they're, I do not think they're irrelevant. I think that... There are lots of cases saying that the expressionis principle applies to contracts as it does to statutes, right? That when you have a specific enumeration of some things, that there's a negative implication that other things are not included, right? Yes. And my opposing counsel said he has no idea why there was no exclusion in this policy. Well, I can't say for certain, but I've been doing this for almost 40 years now, and I can tell you with certainty that the more exclusions that are put into a life insurance policy, the cheaper the premium. Because the more exclusions, the less the chance is that the insurance company will have to pay. So the employer almost certainly bargained for not having an exclusion in this policy for drunk driving. Is there any evidence? You're just speculating. I think it's more than speculation that Linus sells policies, courts have pointed out to these policies in McClellan, that has an exclusion for drunk driving, for driving under the influence, for taking narcotics that are illegal. So they have the ability to sell it. Why it was not in this policy, I think it's a reasonable interpretation that it is offered to the employer and the employer says, no, thank you. We do not want this for our employees. I may have missed this, but did you put in insurance policies that were issued at the same time as this policy that had those exclusions? Is that in the record? Your Honor, the record was created by Scott Wolf Sr., the employee of Boeing, and he didn't put in really much of anything other than an incredulous letter that how can you tell me that my son's drunk driving accident was not an accident? So the answer is no. The answer is no, that it was not put into the record. But I think logic, which I would like to think that logic comes into play here, says that the more exclusions that are put in, the less expensive the premiums. The employer could have paid a cheaper premium to have many more exclusions. It most likely chose not to do so. Now, you're correct, Mr. Wolf did not put these things in the record, but Lina has control of the record. Lina knows it sold the policy. It could have done an investigation. Lina's investigation was, to call it shoddy would be an understatement. I think your client's a plaintiff, right? So didn't you have the burden to prove your case? My client is the plaintiff. And once again, my client is a layperson. He was not a lawyer. So he did this case pro se? He created the administrative record pro se. It came to lawyers after it was denied. The court has discussed what it said. His response was basically to Lina, what are you talking about? My son died of a drunk driving accident. How can you deny this? Lina did not explain to him, we need you to do X, Y, and Z. It said nothing. It didn't explain to him to put in statistics about how rare it is for somebody to drive under the influence and die. Going back to the pad field test just for a moment, which Lina would like to push away, the district court did not want to allow statistics in. It took the position that insureds don't read them. But in the Kovacs decision, there were statistics in there. And it talked about .17%, on a conservative estimate, of insureds who drive under the influence end up dying. It also, the Kovacs test, was also talking about a 75%. We're talking about roughly 500 times the difference between .17% and 75%. Now, how can that be substantially certain or even highly likely? It's not. So, losing on the pad field test below, Lina has come before this court and said, wait, we now want a different test because we put in the word unforeseeable. But what they have not done is define unforeseeable. And I would go back and reiterate that unforeseeable in this context could not be more ambiguous. How is an insured supposed to know what that means? They have the ability to deal with it by saying, we are going to list exclusions and we are not going to cover what we consider are foreseeable events. For example, they did put down hang gliding is a foreseeable accident we're not going to cover. Paragliding is a foreseeable accident we're not going to cover. Self-inflicted injuries are not covered. They've never argued that this was self-inflicted. Lina says that Mr. Wolf, Jr. should have known and they distinguish, I believe it was the McClellan case, by talking about the fact that Mr. McClellan was talking to his wife about what they were going to do and guarding events. Well here, Mr. Wolf, Jr. put a seatbelt on. Clearly, he wasn't thinking about dying it wasn't a self-inflicted injury he did the thing that actually in the policy Lina says, if you put a seatbelt on and you are killed we're not going to only pay you the policy benefit we're going to pay you an extra 10% of the policy benefit because putting a seatbelt on indicates you're trying to be safe. It is difficult to stand here and talk about a man putting a seatbelt on while trying to be safe while driving under the influence. I don't want to be seen as being a proponent of driving intoxicated. I'm not. I'm a proponent of drafting clear policy language where insureds know when they're covered and when they're not. And the best, most obvious way to do that if you're going to put exclusions in exclude what you're not going to cover don't create what I think Lina has done a list of hidden exclusions that we are going to apply This is really what it is. I don't think anybody can argue that common nomenclature Mr. Wolf Jr. suffered a drunk driving accident but Lina is saying we're going to take it your conduct was beyond an accident. If it's beyond an accident and they have a way of determining it was beyond an accident because he was driving under the influence and going too fast why didn't they say so? They know how to do it. Padfield has been a law of this circuit for 20 years I did not find any cases from the circuit discussing it. Perhaps it would be appropriate for the court to say in a published decision if you want to exclude things as being a super accident that's not covered exclude it. We're going to tell you how. It's very easy to do. You've done it before. And when you've done it before the court supports you. Lina has won these cases where they've put in the exclusion for drunk driving If there is an exclusion in this case I wouldn't be standing here because I would never have taken this case if there was a clear exclusion for drunk driving. Unless the court has questions for me. I think we have your argument. Do you have some time for rebuttal? Thank you. With respect to the evidence and the record of other exclusions, there is none. With respect to Padfield I'd like to remind the court that it is not an alcohol related case. And I think that the kind of activity involved in Padfield helped in part to generate the substantially certain test that's announced in that case. It relied on the Todd decision which also involved autoerotic asphyxiation and so in some sense Padfield is not on all fours. But for the purposes of going forward I'm going to assume that substantially certain is the controlling standard because I believe that is established in this case. Judge Settle believed that we were almost there or this case was nearly there I can't remember the exact words He gave two hypotheticals of what he thought would reach the standard One of which was willfully driving with your eyes closed next to a cliff and the second was intentionally driving into oncoming traffic. And I think that that's the kind of behavior that we have here. You've got a gentleman who is impaired. Dr. Seek's report in the record and in the denial letters explains the impact on his ability to react his awareness of risk, etc. And here you have him speeding the wrong way down a road right next to the ocean. I mean it's like road 234 feet whatever it is, ocean. I think that that reaches that level of substantial certainty based on conduct. It's clearly a severe case based on the level of alcohol involved It's not a mild or a moderate case The Bertell case in that sense is helpful to defense utilizing the substantially certain standard because in that case you had a gentleman who was driving at a high rate of speed but it was only twice the posted speed limit but significantly his BAC was only .06 he wasn't even legally drunk. It's interesting though in both the 4th circuit and the 10th circuit cases the BAC was even .20, wasn't it? In Johnson it was .289 and in Lazzamar it was .227. I don't think we can draw anything totally conclusive from the fact that there's different BACs in different cases. You're saying he was roaringly drunk but in those cases he was even drunker and they still held it was an accident. Well and there's cases with lower BACs where they found that it was not an accident. If this were a drug overdose case and people do die of drug overdose, would Lina take the position that those are all foreseeable and therefore no coverage? Well, I hate to speculate about what Lina would and wouldn't do with some other set of facts. I suppose it might depend on what drug was involved, whether it was prescription or street that kind of thing. So I don't know. I'm just saying people do engage in a lot of negligent and even reckless behavior and yet people common sense would say this was an accidental death. And the dangers of alcohol are well known and that is why there is a certain category of alcohol cases that are like the quote unquote Russian roulette cases where risk is just so significant that you can't countenance it and it no longer is an accident. I see I'm over my time. Thank both sides for their argument. The case of Scott Wolf versus Life Insurance Company of North America is submitted.
judges: Gilman, IKUTA, MILLER